UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

**FILED**

MAY - 2 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

FREEDOM WATCH, Inc.
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006

          Plaintiff,

v.

CENTRAL INTELLIGENCE AGENCY
Washington, D.C. 20505

NATIONAL SECURITY AGENCY
9800 Savage Road
Fort Meade, M.D. 20755

DEPARTMENT OF DEFENSE
1400 Defense Pentagon
Washington, D.C. 20301-1400

DEPARTMENT OF STATE
2201 C Street NW
Washington, D.C. 20520

          Defendants.

Case: 1:12-cv-00721
Assigned To : Huvelle, Ellen S.
Assign. Date : 5/2/2012
Description: FOIA/Privacy Act

## COMPLAINT

Plaintiff Freedom Watch, Inc. brings this action against the Central Intelligence Agency, the National Security Agency, the Department of Defense, and the Department of State, to compel compliance with the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). As grounds therefor, Plaintiff alleges as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §1331. Venue is proper in this district pursuant to 28 U.S.C. §1391(e).

### PARTIES



2. Plaintiff Freedom Watch is a non-profit, public interest foundation organized under the laws of the District of Columbia and having its principal place of business at 2020 Pennsylvania Ave., NW Suite 345, Washington, DC, 20006. Plaintiff seeks to promote openness within the federal government and their actions.

3. Defendants are agencies of the United States Government. Defendants have possession, custody, and control of records to which Plaintiff seeks access.

## STATEMENT OF FACTS

4. On or about April 4, 2012 Plaintiff sent a FOIA request, via facsimile and the mail, to defendants seeking records about leaked information as set forth below and attached as Exhibit 1. Specifically, Plaintiff sought:

"...all correspondence, memoranda, documents, reports, records, statements, audits, lists of names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs, facsimile logs, telephone records call sheets, tape recordings, video/movie recordings, notes, examinations, opinions, folders, files, books, manuals, pamphlets, forms, drawings, charts, photographs, electronic mail, and other documents and things (hereinafter, "information") that refer or relate to the following in any way, within ten (10) business days as set forth below:

1) Any and all information that refers or relates to the New York Times article entitled "U.S. Assessment of Iranian Risks Took Tricky Path" by James Risen on Sunday, March 18, 2012;
2) Any and all information that refers or relates to the New York Times article "U.S. Simulation Forecasts Perils of Strike at Iran" by Mark Mazzetti and Thom Shanker on Tuesday, March 20, 2012;
3) Any and all information that refers or relates to the Foreign Policy article entitled "Israel's Secret Staging Ground" by Mark Perry on March 28;
4) All information "briefed on the results" of any war games or other simulations "leaked" or otherwise provided about the 2010 National Intelligence Estimate, as mentioned in the NY Times article "U.S. Assessment of Iranian Risks Took Tricky Path" by James Risen on Sunday, March 18, 2012;

2

5) Any and all information "leaked" or otherwise provided about a draft version of the 2010 National Intelligence Estimate;
6) Any and all information "leaked" or otherwise provided about new evidence that caused a delay or revisions in the 2010 National Intelligence Estimate;
7) Any and all information "leaked" or otherwise provided about how the Islamic Republic of Iran is still attempting to purchase a bomb;
8) Any and all information General Mattis told his aides about an Israeli strike on Iran;
9) Any and all information "leaked" about an Israeli first strike;
10) Any and all information "leaked" about long range bombers, refueling aircraft, and precision missiles doing damage to the Iranian nuclear program;
11) Any and all information "leaked" about the results of testing internal military communications;
12) Any and all information "leaked" about American officials saying that they believe Israel would probably give the United States little or no warning should Israeli officials make the decision to strike Iranian nuclear sites;
13) Any and all information "leaked" about experts predicting that Iran would try to carefully manage the escalation after an Israeli first strike;
14) Any and all information "leaked" about experts believing that Iran would use an Israeli first strike as rationale for attacking the United States;
15) Any and all information "leaked" about military specialists who have assessed the potential ramification of an Israeli attack;
16) Any and all information "leaked" about military specialists who claim it is not possible to predict how Iran will react in the heat of conflict;
17) Any and all information "leaked" about Israeli intelligence estimates backed by academic studies;
18) Any and all information "leaked" about the results of counterstrike by the Islamic Republic of Iran after an attack by Israel;
19) Any and all information "leaked" about the possibility of Israel striking the Islamic Republic of Iran within the next year;
20) Any and all information "leaked" about top administration officials saying that Iran has not decided to pursue a nuclear weapon;
21) Any and all information "leaked" about American intelligence officials expressing confidence in the spy agencies' assertions that Iran has not decided to pursue a nuclear weapon;
22) Any and all information "leaked" about former intelligence agents assessing the Islamic Republic of Iran's ambition for a nuclear weapon;
23) Any and all information "leaked" discussing the difficulty of obtaining intelligence from the Islamic republic of Iran;
24) Any and all statements made by the Islamic Republic of Iran saying that its nuclear program is for peaceful civilian purposes;

25) Any and all information "leaked" about American intelligence agencies and the International Atomic Energy Agency picking up evidence in recent years that some Iranian research activities maybe be weapons-related continuing from 2003;
26) Any and all information "leaked" about Mossad's agreement with American intelligence assessments;
27) Any and all information "leaked" about American intelligence agencies monitoring Iranian officials and scientists and nuclear sites in order to determine whether the weapons program has been restarted;
28) Any and all information "leaked" about how collecting independent human intelligence has been the most difficult task for American intelligence;
29) Any and all information "leaked" about technological mistake by a CIA agency officer in 2004 that put a whole network of Iranian agents in jeopardy;
30) Any and all information "leaked" about the Mujadhadeen Khalq or M.E.K. which is based in Iraq;
31) Any and all information "leaked" about the United States and Israel sharing information on the Islamic Republic of Iran;
32) Any and all information "leaked" about the United States placing clandestine ground sensors which can detect electromagnetic signals or radioactive emissions that could be linked to nuclear activity near suspect Iranian facilities;
33) Any and all information "leaked" or otherwise provided to the media about eavesdropped or otherwise intercepted telephone conversations of Iranian officials discussing their nuclear program, as mentioned in the NY Times article "U.S. Assessment of Iranian Risks Took Tricky Path" by James Risen on Sunday, March 18, 2012;
34) Any and all information "leaked" or otherwise provided to the media about Shahram Amiri, the Iranian scientist who defected from Iran in 2009 and then went back to Iran in 2010, as mentioned in the NY Times article "U.S. Assessment of Iranian Risks Took Tricky Path" by James Risen on Sunday, March 18, 2012;
35) Any and all information "leaked" or otherwise provided to the media about shared intelligence between the United States and Israel, as mentioned in the NY Times article "U.S. Assessment of Iranian Risks Took Tricky Path" by James Risen on Sunday, March 18, 2012;
36) Any and all information "leaked" or otherwise provided to the media about intercepted communications of Iranian officials discussing their nuclear program, as mentioned in the NY Times article "U.S. Assessment of Iranian Risks Took Tricky Path" by James Risen on Sunday, March 18, 2012;
37) Any and all information "leaked" or otherwise provided to the media about Operation Internal Lock, as mentioned in the NY Times article "U.S. Simulation Forecasts Perils of Strike at Iran" by Mark Mazzetti and Thom Shanker on Tuesday, March 20, 2012;
38) Any and all information "leaked" or otherwise provided to the media that was previously "classified" information regarding the Islamic Republic of Iran;

39) Any and all information "leaked" or otherwise provided to the media that was previously "classified" information regarding the country of Israel;
40) Any and all information "leaked" or otherwise provided to the media that was previously "classified" information regarding Israel's possible attack or other military strike on the country of the Islamic Republic of Iran;
41) Any and all information "leaked" or otherwise provided to the media about Israel's staging grounds in Azerbaijan for a possible attack on Iran or for any other reason;
42) Any and all information "leaked" or otherwise provided to the media about any possible attack or measure utilized by either the United States or Israel to prevent Iran from obtaining the capability to build or otherwise obtain a nuclear weapon;
43) Any and all information "leaked" or otherwise provided to the media about the sources of the intelligence that was released to the media;
44) Any and all information linking the Obama Administration to the release of any classified information;
45) Any and all information linking the State Department to the release of any classified information;
46) The names of the persons, employers and job titles of those who "leaked" the above information to the media;
47) Communications with the White House and/or Office of the President and/or Vice President that refer or relate in any way to the "leaked" information and/or the reasons for "leaking" the information;
48) Any and all information that refer or relate to the decision to "leak" the above previously classified information;
49) Any and all information that refers or relates to government agencies deciding to investigate who "leaked" the above previously classified information."

(Exhibit 1)(Given the identical requests sent to all Defendants, only the 1st page of FOIA requests for Defendants NSA, Dept. of Defense, and Dept. of State are included)

5. Plaintiff requested a fee waiver and expedited processing in accordance with the procedures set forth under the regulations of each agency.

6. The records Plaintiff seeks are of urgent importance and are in the extreme public interest. The American people need to be informed expeditiously through disseminations by Freedom Watch of the requested records, as it affects their immediate well being, economically and otherwise.

7. Between April 13, 2012 and April 16, 2012 Plaintiff received letters through the mail from Defendants acknowledging receipt of Plaintiff's FOIA requests.

8. Pursuant to 5 U.S.C. § 552 (a)(6)(A) Defendant was required and failed to respond timely to Plaintiff's FOIA request.

9. As of the date of this Complaint, Defendants have failed to produce any records responsive to the request or demonstrative that the responsive records are exempt from production. Nor have they indicated whether or when any responsive records will be produced, nor has a fee waiver been granted. In sum, Defendants have failed to respond to the requests in any substantive manner.

10. Because Defendants failed to comply with the time limits set forth in 5 U.S.C. §552(a)(6)(C), Plaintiff is deemed to have exhausted any and all administrative remedies with respect of its FOIA request, pursuant to 5 U.S.C. § 552(a)(6)(C).

## COUNT 1
### (Violation of FOIA, 5 U.S.C § 552, et. seq.)

11. Plaintiff realleges paragraphs 1 through 10 as if fully stated herein.

12. Defendants are unlawfully withholding records requested by Plaintiff pursuant to 5 U.S.C. § 552, et. seq.

13. Plaintiff is being irreparably harmed by reason of Defendants' unlawful withholding of requested records, and Plaintiff will continue to be irreparably harmed unless Defendants are compelled to conform to the requirements of this law.

WHEREFORE, Plaintiff respectfully requests that the Court: (1) Order Defendants to conduct expedited searches for any and all responsive records to Plaintiff's FOIA request and demonstrate

that they employed search methods reasonably likely to lead to the discovery of records responsive to Plaintiff's FOIA request; (2) order Defendants to expeditiously produce, by a date certain, any and all non-exempt records responsive to Plaintiff's FOIA request and a Vaughn index of any responsive records withheld under claim of exemption; (3) enjoin Defendants from continuing to withhold any and all non-exempt records responsive to Plaintiff's FOIA request; (4) grant Plaintiff an award of attorney's fees and other litigation costs reasonably incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and (5) grant Plaintiff any other relief as the Court deems just or proper.

Dated: April 30, 2012

Respectfully Submitted,

Larry Klayman, Esq.
D.C. Bar No. 334581
Chairman & Chief Counsel
Freedom Watch
2020 Pennsylvania Ave. NW, Suite 345
Washington, DC 20006
Tel: (310) 595-0800
Email: leklayman@gmail.com