**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **FREEDOM WATCH, INC.,** *Plaintiff*, v. **CENTRAL INTELLIGENCE AGENCY,** *et al.*, *Defendants*. | Civil Action No. 12-0721 (ESH) |

**MEMORANDUM OPINION**

Plaintiff Freedom Watch, Inc., has sued the Central Intelligence Agency ("CIA"), the National Security Agency ("NSA"), the Department of Defense ("DoD"), and the Department of State ("State"), alleging that defendants have violated the Freedom of Information Act, 5 U.S.C. §§ 552 *et seq.* ("FOIA"). (Complaint, May 2, 2012 [Dkt. No. 1] ("Compl.").) Before the Court is defendants' Motion to Dismiss (Aug. 17, 2012 [Dkt. No. 6] ("Defs. Mot.")), plaintiff's opposition (Aug. 31, 2012 [Dkt. No. 9] ("Pl. Opp'n")), and defendants' reply (Sept. 10, 2012 [Dkt. No. 10] ("Defs. Reply")). For the reasons stated, the Court will grant defendants' motion.

**BACKGROUND**

In April 2012, Freedom Watch sent identical FOIA requests to defendants "seeking records about leaked information." (Compl. ¶ 4.) The "crux of plaintiff's FOIA request was the 'leaked' information that was obtained . . . by the New York Times in their two articles of March 17 and March 19, 2012." (Pl. Opp'n at 12.) Freedom Watch's request must be duplicated in its entirety. "Specifically, plaintiff sought:

. . . all correspondence, memoranda, documents, reports, records, statements,

audits, lists of names, applications, diskettes, letters, expense logs and receipts, calendar or diary logs, facsimile logs, telephone records call sheets, tape recordings, video/movie recordings, notes, examinations, opinions, folders, files, books, manuals, pamphlets, forms, drawings, charts, photographs, electronic mail, and other documents and things (hereinafter, "information") that refer or relate to the following in any way, within ten (10) business days as set forth below:

> 1) Any and all information that refers or relates to the New York Times article entitled "U.S. Assessment of Iranian Risks Took Tricky Path" by James Risen on Sunday, March 18, 2012;
>
> 2) Any and all information that refers or relates to the New York Times article "U.S. Simulation Forecasts Perils of Strike at Iran" by Mark Mazzetti and Thorn Shanker on Tuesday, March 20, 2012;
>
> 3) Any and all information that refers or relates to the Foreign Policy article entitled "Israel's Secret Staging Ground" by Mark Perry on March 28;
>
> 4) All information "briefed on the results" of any war games or other simulations "leaked" or otherwise provided about the 2010 National Intelligence Estimate, as mentioned in the NY Times article "U.S. Assessment of Iranian Risks Took Tricky Path" by James Risen
>
> on Sunday, March 18, 2012; bombers, refueling aircraft, and precision missiles doing damage to the Iranian nuclear program;
>
> 11) Any and all information "leaked" about the results of testing internal military communications;
>
> 12) Any and all information "leaked" about American officials saying that they believe Israel would probably give the United States little or no warning should Israeli officials make the decision to strike Iranian nuclear sites;
>
> 13) Any and all information "leaked" about experts predicting that Iran would try to carefully manage the escalation after an Israeli first strike;
>
> 14) Any and all information "leaked" about experts believing that Iran would use an Israeli first strike as rationale for attacking the United States;
>
> 15) Any and all information "leaked" about military specialists who have assessed the potential ramification of an Israeli attack;
>
> 16) Any and all information "leaked" about military specialists who claim it is not possible to predict how Iran will react in the heat of conflict;
>
> 17) Any and all information "leaked" about Israeli intelligence estimates backed by academic studies;
>
> 18) Any and all information "leaked" about the results of counterstrike by

the Islamic Republic of Iran after an attack by Israel;

19) Any and all information "leaked" about the possibility of Israel striking the Islamic Republic of Iran within the next year;

20) Any and all information "leaked" about top administration officials saying that Iran has not decided to pursue a nuclear weapon;

21) Any and all information "leaked" about American intelligence officials expressing confidence in the spy agencies' assertions that Iran has not decided to pursue a nuclear weapon;

22) Any and all information "leaked" about former intelligence agents assessing the Islamic Republic of Iran's ambition for a nuclear weapon;

23) Any and all information "leaked" discussing the difficulty of obtaining intelligence from the Islamic republic of Iran;

24) Any and all statements made by the Islamic Republic of Iran saying that its nuclear program is for peaceful civilian purposes;

25) Any and all information "leaked" about American intelligence agencies and the International Atomic Energy Agency picking up evidence in recent years that some Iranian research activities maybe be weapons-related continuing from 2003;

26) Any and all information "leaked" about Mossad's agreement with American intelligence assessments;

27) Any and all information "leaked" about American intelligence agencies monitoring Iranian officials and scientists and nuclear sites in order to determine whether the weapons program has been restarted;

28) Any and all information "leaked" about how collecting independent human intelligence has been the most difficult task for American intelligence;

29) Any and all information "leaked" about technological mistake by a CIA agency officer in 2004 that put a whole network of Iranian agents in jeopardy;

30) Any and all information "leaked" about the Mujadhadeen Khalq or M.E.K. which is based in Iraq;

31) Any and all information "leaked" about the United States and Israel sharing information on the Islamic Republic of Iran;

32) Any and all information "leaked" about the United States placing clandestine ground sensors which can detect electromagnetic signals or radioactive emissions that could be linked to nuclear activity near suspect Iranian facilities;

33) Any and all information "leaked" or otherwise provided to the media

about eavesdropped or otherwise intercepted telephone conversations of Iranian officials discussing their nuclear program, as mentioned in the NY Times article "U.S. Assessment of Iranian Risks Took Tricky Path" by James Risen on Sunday, March 18, 2012;

34) Any and all information "leaked" or otherwise provided to the media about Shahram Amiri, the Iranian scientist who defected from Iran in 2009 and then went back to Iran in 2010, as mentioned in the NY Times article "U.S. Assessment of Iranian Risks Took Tricky Path" by James Risen on Sunday, March 18, 2012;

35) Any and all information "leaked" or otherwise provided to the media about shared intelligence between the United States and Israel, as mentioned in the NY Times article "U.S. Assessment of Iranian Risks Took Tricky Path" by James Risen on Sunday, March 18, 2012;

36) Any and all information "leaked" or otherwise provided to the media about intercepted communications of Iranian officials discussing their nuclear program, as mentioned in the NY Times article "U.S. Assessment of Iranian Risks Took Tricky Path" by James Risen on Sunday, March 18, 2012;

37) Any and all information "leaked" or otherwise provided to the media about Operation Internal Lock, as mentioned in the NY Times article "U.S. Simulation Forecasts Perils of Strike at Iran" by Mark Mazzetti and Thorn Shanker on Tuesday, March 20, 2012;

38) Any and all information "leaked" or otherwise provided to the media that was previously "classified" information regarding the Islamic Republic of Iran;

39) Any and all information "leaked" or otherwise provided to the media that was previously "classified" information regarding the country of Israel;

40) Any and all information "leaked" or otherwise provided to the media that was previously "classified" information regarding Israel's possible attack or other military strike on the country of the Islamic Republic of Iran;

41) Any and all information "leaked" or otherwise provided to the media about Israel's staging grounds in Azerbaijan for a possible attack on Iran or for any other reason;

42) Any and all information "leaked" or otherwise provided to the media about any possible attack or measure utilized by either the United States or Israel to prevent Iran from obtaining the capability to build or otherwise obtain a nuclear weapon;

43) Any and all information "leaked" or otherwise provided to the media

>about the sources of the intelligence that was released to the media;
>
>44) Any and all information linking the Obama Administration to the release of any classified information;
>
>45) Any and all information linking the State Department to the release of any classified information;
>
>46) The names of the persons, employers and job titles of those who "leaked" the above information to the media;
>
>47) Communications with the White House and/or Office of the President and/or Vice President that refer or relate in any way to the "leaked" information and/or the reasons for "leaking" the information;
>
>48) Any and all information that refer or relate to the decision to "leak" the above previously classified information;
>
>49) Any and all information that refers or relates to government agencies deciding to investigate who "leaked" the above previously classified information.

(Compl. ¶ 4 (some internal quotation marks omitted).) "Plaintiff requested a fee waiver and expedited processing in accordance with the procedures set forth under the regulations of each agency." (*Id.* ¶ 5.)

Defendants denied Freedom Watch's FOIA requests. The CIA responded in writing on April 12, 2012, and denied plaintiff's request for expedited processing; it wrote again on April 30, 2012, stating that it could neither confirm nor deny the existence or nonexistence of records responsive to plaintiff's request. (*See* Defs. Mot., Ex. A ("Giuffrida Decl.") ¶¶ 6–7; *see also* Giuffrida Decl., Att. 2 (CIA's April 12, 2012 response); *id.*, Att. 3 (CIA's April 30, 2012 response).) The CIA advised Freedom Watch of its right to an administrative appeal if it responded "within 45 days." (*Id.*) Freedom Watch did not appeal the CIA's decision and the time for appeal has passed. (*See* Giuffrida Decl. ¶ 8.)

The NSA responded in writing on April 13, 2012, and denied plaintiff's request for documents, stating that the existence or non-existence of the materials plaintiff requested is

classified and exempt from disclosure. (*See* Defs. Mot., Ex. B ("Phillips Decl.") ¶¶ 4–5; *see also* Phillips Decl., Att. 2 (NSA's response).) The NSA advised Freedom Watch that it had 60 days to appeal. (*Id.* at 2.) Freedom Watch did not appeal the NSA's decision and the time for appeal has passed. (*See* Phillips Decl. ¶ 7.)

The DoD responded in writing on April 19, 2012, stating that the document request was not a proper FOIA request because it did not reasonably describe the records sought. (*See* Defs. Mot., Ex. C ("Kammer Decl.") ¶¶ 3–4; *see also* Kammer Decl., Att. 2 (DoD's response).) The DoD advised Freedom Watch that it had 60 days to appeal. (*Id.* at 1–2.) Freedom Watch did not appeal the DoD's decision and the time for appeal has passed. (Kammer Decl. ¶ 4.)

Finally, State responded in writing on April 23, 2012, and advised Freedom Watch that it could not process the request because Freedom Watch failed to describe the records sought in a way that someone familiar with State records and programs could locate them. (*See* Defs. Mot., Ex. D ("Walter Decl.") ¶ 3; *see also* Walter Decl., Att. 2 (State's response).[1]) State instructed Freedom Watch to "narrow the scope of [its] request." (*Id.* at 2.) State also stated that, if Freedom Watch "wish[ed] to pursue this request, [it might] ask for expedited treatment" if or when it sent State "a new request, and suppl[ied] the additional information necessary to make [its] request valid." (*Id.* at 3.)

---

[1] Plaintiff alleges that State "neither responded nor claimed any exemptions to [its] FOIA request." (Plaintiff's Partial Motion for Summary Judgment Against Defendant Department of State, July 20, 2012 [Dkt. No. 4] at 1; *see also* Plaintiff's Reply in Support of Partial Summary Judgment Against Defendant Department of State, Aug. 24, 2012 [Dkt. No. 8] at 1 ("Plaintiff did not, and has not received any correspondence from Defendant Department of State and has filed an affidavit to that effect.").) In response, defendants have produced evidence to show that State's response to Freedom Watch's FOIA request was properly mailed. (*See* Walter Decl. ¶ 3.) However, because the Court will grant defendants' motion to dismiss with regard to State (*see* Section II, *supra*), the Court need not address the issue and will deny plaintiff's motion for partial summary judgment as moot.

Freedom Watch sued defendants on May 2, 2012, and defendants have have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

## ANALYSIS

### I. EXHAUSTION OF ADMINISTRATIVE REMEDIES

A FOIA action is subject to dismissal for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), when a plaintiff has failed to exhaust its administrative remedies. *Hidalgo v. FBI*, 344 F.3d 1256, 1258, 1260 (D.C. Cir. 2003). The FOIA "statutory scheme 'requires each requestor to exhaust administrative remedies,'" *id.* at 1259 (quoting *Sinito v. U.S. Dep't of Justice*, 176 F.3d 512, 516 (D.C. Cir. 1999)), and "'[c]ourts have consistently confirmed that the FOIA requires exhaustion of this appeal process before an individual may seek relief in the courts.'" *Id.* (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61–62 (D.C. Cir. 1990) (collecting cases)); *see* 5 U.S.C. § 552(a)(6).

In their responses to Freedom Watch's FOIA requests, the CIA, the NSA, and the DoD informed Freedom Watch of its right to appeal and the process by which such appeals could be pursued. (*See* Giuffrida Decl., Att. 3 at 1 (CIA's April 30, 2012 response); Phillips Decl., Att. 2 at 2 (NSA's response); Kammer Decl., Att. 2 at 1–2 (DoD's response).) The declarations from the CIA, the NSA, and the DoD confirm that those agencies did not receive appeals (*see* Giuffrida Decl. ¶ 8; Phillips Decl. ¶ 7; Kammer Decl. ¶ 4.), and, more importantly, Freedom Watch does not deny that it did not seek appeals of their decisions. (Pl. Opp'n at 7–9.) Rather, Freedom Watch argues only that "[a] plaintiff need not 'exhaust administrative remedies that would be futile' to exhaust." (*Id.* at 7 (quoting *Singh v. Ashcroft*, 362 F.3d 1164, 1160 (9th Cir. 2004).)

Even assuming, however, that the futility exception to the exhaustion requirement that

applies in immigration cases such as *Singh* has applicability in the FOIA context,[2] Freedom Watch has failed to demonstrate the futility of appealing the CIA's, the NSA's, and the DoD's decisions. The futility exception applies only if "following the administrative remedy would be futile *because of certainty of an adverse decision*." *Randolph-Sheppard Vendors of Am. v. Weinberger*, 795 F.2d 90, 105 (D.C. Cir. 1986) (internal quotation marks and citation omitted). Freedom Watch has fallen far short of this demanding standard.

It is simply not sufficient to argue that "[i]t was apparent from the systematic and summarily [*sic*] denial of [p]laintiff's FOIA requests that [d]efendants were unwilling to disclose even a portion of the documents and other information that [p]laintiff had requested." (Pl. Opp'n at 7.) Moreover, the CIA's, the NSA's, and the DoD's responses are anything but summary denials. Each agency's response sets forth in significant detail the reasons for the agency's particular action. The CIA stated that it had "completed a thorough review of [Freedom Watch's] request and [had] determined in accordance with section 3.6(a) of Executive Order 13526[ that] the CIA can neither confirm nor deny the existence or nonexistence of" responsive

---

[2] Freedom Watch has cited no caselaw establishing or addressing a futility exception to the exhaustion requirement in FOIA cases. Moreover, binding Circuit precedent could not be clearer: exhaustion of administrative remedies "is a *mandatory prerequisite* to a lawsuit under FOIA." *Wilbur v. CIA*, 355 F.3d 675, 676 (D.C. Cir. 2004) (emphasis added, internal quotation marks and citation omitted). *But see Armstrong v. Bush*, 807 F. Supp. 816, 819 (D.D.C. 1992) ("Defendants also contend that the [p]laintiffs have not exhausted their administrative remedies under FOIA. But it is well established that administrative exhaustion is not required where it would be 'futile because of certainty of an adverse decision.'" (quoting *James v. U.S. Dep't of Health & Human Servs.*, 824 F.2d 1132, 1138 (D.C. Cir. 1987))). Even to the extent that *Armstrong* should be followed, however, it is of little help to plaintiffs here. In *Armstrong*, the Court concluded that exhaustion would be futile because defendants had consistently argued that the kinds of records sought were not subject to FOIA. *Id.* Here, by contrast, as described below defendants responded to Freedom Watch's FOIA requests with detailed explanations of why, pursuant to agency determinations and in light of the nature of Freedom Watch's requests, they were denying them. Defendants did not assert the kind of categorical bar to disclosure that caused the Court in *Armstrong* to conclude that exhaustion would be futile. *Id.*

records because "[t]he fact of the[ir] existence or nonexistence . . . is currently and properly classified." (Giuffrida Decl., Att. 3 at 1.) The CIA therefore denied Freedom Watch's request "pursuant to FOIA exemptions (b)(1) and (b)(3)." (*Id.*) The NSA's response was similar and no less detailed. (*See* Phillips Decl., Att. 2 at 1–2.) The DoD, on the other hand, stated that it was denying Freedom Watch's request because it did "not reasonably describe the records that" Freedom Watch sought, such that it was "not a proper FOIA request." (Kammer Decl., Att. 2 at 1.) The DoD, noting that "[t]he FOIA does not require agencies to conduct research in order to respond to requests," stated in particular that Freedom Watch had "attached multiple newspaper articles for us to try to determine records [Freedom Watch sought] for several of the 49 items in [Freedom Watch's] request," and that the DoD did "not consider that a reasonable description of records." (*Id.* ("The other items in your request are not reasonably described as well. . . . Descriptive information may be provided in these ways . . . .").) Such responses give no grounds for arguing that exhaustion of administrative remedies would be futile. Accordingly, the Court will grant defendants' motion to dismiss the CIA, the NSA, and the DoD for failure to exhaust administrative remedies.[3]

## II.     PROPER FOIA REQUEST

"Two requirements must be met in order for a FOIA request to be proper: (1) the request must 'reasonably' describe the records sought, and (2) it must be 'made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed.'" *Lowe v.*

---

[3] In their motion to dismiss, defendants argue failure to exhaust administrative remedies as to the CIA and the NSA only. (*See* Defs. Mot. at 7; Defs. Reply at 2 n.1.) However, the Court takes note of the fact that, as described above, the DoD also informed Freedom Watch of its right to an appeal—a right which Freedom Watch did not choose to exercise. Regardless, the Court would also grant defendants' motion to dismiss as to the DoD for the reasons set forth in Section II, *infra*.

*DEA*, No. 06-cv-1133, 2007 WL 2104309, at *4 (D.D.C. July 22, 2007) (quoting (5 U.S.C. § 552(a)(3)(A)). "Omitting one of the two threshold requirements for a proper FOIA request . . . warrants dismissal." *Id.* at *5 (citing *Kessler v. United States*, 899 F. Supp. 644, 645 (D.D.C. 1995)).

With regard to the first requirement, records are reasonably described "if a professional employee of the agency familiar with the subject matter can locate the records with a 'reasonable amount of effort.'" *Armstrong v. Bush*, 139 F.R.D. 547, 553 (D.D.C. 1991) (quoting *Am. Fed'n of Gov't Employees, Local 2782 v. U.S. Dep't of Commerce*, 632 F. Supp. 1272, 1278 (D.D.C. 1986), *aff'd*, 907 F.2d 203 (D.C. Cir. 1990)); *accord Keys v. Dep't of Homeland Sec.*, No. 08-cv-0726, 2009 WL 614755, at *5 (D.D.C. March 10, 2009). "An agency need not honor a [FOIA] request that requires 'an unreasonably burdensome search.'" *Am. Fed'n of Gov't Employees, Local 2782*, 907 F.2d at 209 (quoting *Goland v. CIA*, 607 F.2d 339, 353 (D.C. Cir. 1978)). "The rationale for this rule is that FOIA was not intended to reduce government agencies to full-time investigators on behalf of requestors." *Assassination Archives & Research Ctr., Inc. v. CIA*, 720 F. Supp. 217, 219 (D.D.C. 1989).

The Court concludes that Freedom Watch's complaint demonstrates on its face that its FOIA requests are virtually incomprehensible and are "so broad as to impose an unreasonable burden upon the agency." *Am. Fed'n of Gov't Employees, Local 2782*, 907 F.2d at 209. "They would require the agency to locate, review, redact, and arrange for inspection a vast quantity of material." *Id.* This might include anything "relating to" the individual nations referenced in the two *New York Times* articles and the *Foreign Policy* article, which include Iran, Israel, Iraq, North Korea, Russia, Azerbaijan, and others. Freedom Watch's demand for "any and all information 'leaked' or otherwise provided about a draft version of the 2010 National

Intelligence Estimate" (Compl. ¶ 4) is extraordinarily broad standing alone; that it is only one of 49 similarly vague inquiries confirms the unreasonable and burdensome nature of Freedom Watch's FOIA requests.  "[I]t is the requester's responsibility to frame requests with sufficient particularity to ensure that searches are not unreasonably burdensome, and to enable the searching agency to determine precisely what records are being requested." *Assassination Archives & Research Ctr.*, 720 F. Supp. at 219; *see Marks v. U.S. Dep't of Justice*, 578 F.2d 261, 263 (9th Cir. 1978) (courts have "held that broad, sweeping requests lacking specificity are not permissible" (collecting cases)); *accord Dale v. IRS*, 238 F. Supp. 2d 99, 104 (D.D.C. 2002); *Keys*, 2009 WL 614755, at *5.  Freedom Watch has not fulfilled its responsibility here.

Moreover, the Court agrees with defendants that Freedom Watch's request, with its references in 42 items to alleged "leaks"—a term that Freedom Watch does not define—would impermissibly require defendants "to undertake an investigation and then draw legal conclusions based on the investigation's findings before they would be in a position to determine whether certain records relate to unauthorized [and possibly unlawful] 'leaks.'"  (Defs. Mot. at 11 n.3.)  In opposing defendants' motion, for example, Freedom Watch states that "[i]f no crime has been committed and previously classified information has now been declassified for release, then [p]laintiff's FOIA requests should be responded to with the now non-exempt documentation and information."  (Pl. Opp'n at 2.)  It is thus evident that Freedom Watch intends for federal employees to make complicated determinations about whether crimes have been committed.  While "[t]he central purpose of FOIA is to 'open[] up the workings of government to public scrutiny,'" *Stern v. FBI*, 737 F.2d 84, 88 (D.C. Cir. 1984) (second alteration in the original) (quoting *McGehee v. CIA*, 697 F.2d 1095, 1108 (D.C. Cir. 1983)), it not intended to force a federal agency to undertake grand-jury style investigations.  *Assassination Archives & Research*

*Ctr., Inc.*, 720 F. Supp. at 219.

Freedom Watch's FOIA requests are identical, and plaintiff cannot overcome the requests' deficiencies by merely arguing that they are "specific enough."  (Pl. Opp'n at 12.)  Accordingly, the Court's conclusion that Freedom Watch's requests do not "reasonably describe[]" the records that it seeks, 5 U.S.C. § 552(a)(3)(A)(i), justifies the dismissal of State and provides an independent basis for dismissing the CIA, the NSA, and the DoD.

## CONCLUSION

Freedom Watch has admitted that it remains "willing to work with [d]efendants in order to further refine the portion of the FOIA request that [d]efendants have not been able to figure out."  (Pl. Opp'n at 13.)  Clearly, this Court is not the proper venue for that process.  Plaintiff's recourse remains with the agencies.  The Court will grant defendants' motion to dismiss.  A separate Order accompanies this Memorandum Opinion.

/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date:   October 5, 2012